IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | No. 4:21-cr-40164-4 |
| Plaintiff, | § § § | |
| v. | § § § | EX-PARTE MOTION FOR REDUCTIONIN SENTENCE PURSUANT TO |
| CHARLES DAVIS, | § § | 18 U.S.C. §3582(c)(1)(A)(i) |
| Defendant. | § § § | |

## I.    Introduction

COMES NOW, the Defendant, Charles Vernon Davis, Pro Se, moving this Court pursuant to the newly-amended 18 U.S.C. §3582(c)(1)(A)(i) for an order reducing his sentence to time served based on Mr. Davis's current circumstances that now satisfy the "extraordinary and compelling" standard under §3582(c)(1)(A)(i), as elaborated by the Sentencing Commission in U.S.S.G. §1B1.13. Mr. Davis would also request that in the interim between this filing and the Court's decision, that it order a home inspection by the United States Probation Office to ensure his release plan meets the high standards of the Court.

After considering the applicable factors set forth in 18 U.S.C. §3553(a), Mr. Davis respectfully requests the Court reduce his sentence to time served and modify the terms of his supervised release to accommodate his pending release plan submitted to the Court.

## II.    Legal Standard

Section 3582(c)(1)(A) "authorizes reduction where: (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'such reduction is consistent with applicable policy statements issued by the Sentencing Commission,' and (3) such a reduction is appropriate 'after

1

United States v. Davis 4:21-cr-40164-04

considering the factors set forth in section §3553(a) to the extent that they are applicable.'"
*United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021) (quoting 18 U.S.C. §3582(c)(1)(A)).

Before seeking relief from the court, a defendant must first submit a request to the facility's warden where the inmate is housed to move from compassionate release on his behalf and then either exhaust his administrative remedies or wait 30 days from the warden's receipt of his request. 18 U.S.C. §3582(c)(1)(A); *United States v. Franco*, 973 F.3d 465, (5th Cir. 2020). Here, Mr. Davis submitted his request to the Wardens' office at FMC Lexington on April____, 2024 To date, he has yet to receive a response.

Section 3582(c)(1)(A) defines "extraordinary and compelling reasons" that merit compassionate release as follows: (1) Medical Circumstances of the Defendant; (2) Age of the Defendant; (3) Family Circumstances of the Defendant; (4) Victim of Abuse; (5) Other Reasons; (6) Unusually Long Sentences. The section also lists other factors that may be considered in combination with other factors when determining 'extraordinary and compelling' circumstances.

The court must also look to the phrase's plain and ordinary meaning. "Extraordinary" means "'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'" *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023) (quoting *Extraordinary*, Webster's New International Dictionary 903 (2d. ed. 1934; 1950)). "'Compelling' is a participle of 'compel,' which means 'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'" *Id.* (quoting *Compel*, Webster's New International Dictionary, *supra*, at 544). Section 3582(c)(1)'s use of these terms together thus limits compassionate release to instances where prisoners like Mr. Davis "face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* (citing *Chambliss*, 948 F.3d 691 (5th Cir. 2020)); see also *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021)

2

United States v. Davis 4:21-cr-40164-04

(considering a condition that roughly 12% of Americans suffer from "commonplace" and not "extraordinary").

The Sentencing Commission has the authority to "promulgate general policy statements….that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Williams*, No. 3:18-CR-0291-B-2, 2021 WL 1865005, at *2 (N.D. Tex. May 10, 2021) (quoting *Shkambi*, 993 F.3d at 391). Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement, U.S.S.G. § 1B1.13 setting forth the circumstances that are considered "extraordinary and compelling reasons." *Id.* (citing *United States v. Muniz*, 4:09-CR-0199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) (citing § 1B1.13(1)(A), cmt. N.1)). As mentioned above, these include the defendant's medical condition, age, family situation, and "other reasons." See § 1B1.13(1)(A), cmt. N.1.4. But Section 1B1.13 only applies to motions filed by "the Director of the [BOP]" and does not bind district courts when addressing a prisoner's own motion. *See Shkambi*, 993 F.3d at 393 (citing § 1B1.13). Therefore, "there are no policy statements applicable to prisoner's compassionate-release motions." *United States v. Escajeda*, 58 F.4th at 188 (citing *Shkambi*, 993 F.3d at 392.) Nonetheless, Section 1B1.13 still informs the courts as to what may constitute 'extraordinary and compelling' reasons for compassionate release. *See Williams*, 2021 WL 1865005, at *2; *United States v. Contreras*, No. 4:18-CR-46(12), 2021 WL 1536504, at *4 (E.D. Tex. Apr. 19, 2021) (finding Section 1B1.13 informative in evaluating an inmates motion post *Shkambi*).

United States v. Davis 4:21-cr-40164-04

The United States Sentencing Commission published its long awaited[1]"Amendment to the Sentencing Guidelines" on April 27, 2023, and went into effect on November 1st, 2023. They modified policy statement U.S.S.G. § 1B1.13. As mentioned above, this policy statement is not binding on courts, but courts routinely use it as guidance in determining whether a reduction in a term of imprisonment should be made pursuant to 18 U.S.C. § 3582(c)(1)(A). Among other things, the amendment adds a section to U.S.S.G. § 1B1.13 for consideration of "unusually long sentences" as an extra ordinary and compelling reasons.[2] The Commission made this amendment to specifically respond to the circuit court split discussed above and agrees with the circuits that authorize consideration of non-retroactive changes in the law as an extraordinary and compelling circumstances warranting a sentence reduction but narrowly limits this approach as outlined above.

In this case, Mr. Davis meets all the factors required under the new amendments. He is suffering from grave medical issues that require long-term, specialized care that is not being provided by the BOP.  Leaving it untreated and having been ignored for a significant period of time, he is at the greatest risk.

### III.    Relevant Facts and Procedural History

On October 31st, 2022, Mr. Davis was sentenced to 84 months in prison pursuant to his plea of guilty for violation of 21 U.S.C. §841(A)(1) and §846. Note that 1B1.13 n.2 specifically states that an extraordinary and compelling reason "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."

---

[1] See AMENDMENT  TO THE SENTNECING GUIDELINES, United States Sentencing Commission, *available at* https://www.ussc.gov/sites/default/files/pdf/amendmeent-process/reader-friendly-amendments/202302_RF.pdf, at p. 5-11 (April 27, 22023).
[2] https://www.ussc.gov/sites/default/files/pdf/amendmeent-process/reader-friendly-amendments/202302_RF.pdf,

United States v. Davis 4:21-cr-40164-04

Mr. Davis has been in custody in connection with the present offenses since his arrest. He is First Step Act eligible, has a MINIMUM risk score of recidivating per PATTERN and a current First Step Act release date of July 14, 2027[3].  Despite Mr. Davis's dire conditions and frequent hospitalizations, he has worked hard to maintain clear conduct.

As relevant here, the examples of "extraordinary and compelling reasons" in U.S.S.G. §1B1.13 include Mr. Davis's medical conditions that continue to go either ignored or have been untreated:

- ➢ Primary Hypertension
- ➢ Congestive Heart Failure [47% risk of cardiovascular event in the next 10 years with Ejection Fracture of 45-50%]
- ➢ Chronic Embolism and Thrombosis of the Vein
- ➢ Type 2 Diabetes Mellitus [with diabetic neuropathy]
- ➢ Neuro-cognitive Disorder
- ➢ Coagulation Defect [Protein C and Protein S deficiency]
- ➢ Vitamin D Deficiency
- ➢ Obesity
- ➢ Long Term Use of Anticoagulants
- ➢ BMI or 34.0-34.9
- ➢ Neurodegenerative process
- ➢ Atrial Fibrillation

His current medication regimen consists of the following daily medications either infused or taken by mouth:

- ➢ Atorvastatin 40mg
- ➢ Dovonex 0.005%
- ➢ Carvedilol 12.5mg
- ➢ Cholecalciferol 25mcg
- ➢ Duloxetine 60mg
- ➢ Lasix 40mg
- ➢ Glucose 4g
- ➢ Insulin NPH
- ➢ Insulin Injection 70-30
- ➢ Lisinopril 20MG
- ➢ Metformin 1000mg
- ➢ Nitroglycerin 0.4mg

---

[3] This date is presumptive and will adjust at the rate of 15-days per month—where Mr. Davis earns credit towards home confinement/residential reentry center.

United States v. Davis 4:21-cr-40164-04

> ➤ Warfarin/Coumadin 1mg
> ➤ Warfarin/Coumadin 6mg
> ➤ Aricept 10mg

## IV.   Argument

### A. The Court has the authority to consider Mr. Davis's motion because more than 30 days have elapsed since the request was received by the FMC Lexington Warden.

Although the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the BOP, Congress expanded the statute in the *First Step Act of 2018*. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended. § 3582(c)(1)(A)(i), now permits courts to consider motions filed by the defendant so long as the defendant has exhausted his remedies.

In this case, Mr. Davis has met the timing provision. Mr. Davis submitted a request for reduction in sentence to the warden, and the warden's office did not respond. *See*, e.g. *United States v. Joling*, 2020 WL 1903280, at *2 (D. Oregon April 17, 2020) (quoting *Brown v. United States*, 411 F. Supp. 3d 446, 452 (S.D. Iowa 2019) ("Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it.")).

### B. This Court is empowered to determine what constitutes "extraordinary and compelling" reasons that justify a reduction in sentence.

Title 18, United States Code §3582(c)(1)(A)(i) allows a court to reduce an inmate's sentence if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under S3553(a) warrant a reduction. Congress has not defined the term "extraordinary and compelling," but the Sentencing Commission ("Commission") has issued a policy statement updating the definition of the term.

6

The policy statement authorizes a reduction in sentence when there are "extraordinary and compelling reasons" that warrant the reduction; of the "defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prisons" for the offense or offenses for which the defendant is imprisoned, provided that the defendant is not a danger to the safety of any other person or to the community, and the reduction is consistent with this policy statement." U.S.S.G. §1B1.13(1)(A)-(B).

The application note also provide three examples of "extraordinary and compelling circumstances," which includes (1) a defendant who is suffering from a terminal illness, defined as a "serious and advanced illness with an end of life trajectory", (2) a defendant who is suffering from a serious physical or medical condition or cognitive impairment, or mental health impairment because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover", and (3) the defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at ;least 10 years or 75 percent of his or her term of imprisonment, whichever is less. U.S.S.G. §1B1.13(1)(A)-(B) (emphasis added). A fourth category applies when the defendant is the only available caregiver for their minor child or relative. U.S.S.G. §1B1.13(1)(C).

The Guidelines policy statement also includes a fifth "catchall" provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. §1B1.13, comment. N. 1(D) (emphasis added).

United States v. Davis 4:21-cr-40164-04

**1. This Court's discretion is not limited by the existing policy statement.**

Although Section 3582(c) directs the Court to grant a reduction in sentence where doing so is consistent with any "applicable" policy statement, U.S.S.G., §1B1.13 was amended on November 1st, 2023.

Congress enabled incarcerated persons to file "direct motions to district courts" for sentence modification in part to "increase the use of compassionate release," the "only way" to give force to that command "is to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *Brown*, 411 F. Supp. 3d at 451; *United States v. Redd*, 2020 WL 1248493 at *7 (E.D. Va. March 16, 2020) (citing cases.)

Even where courts have not deemed §1B1.13 entirely inapplicable due to the lack of amendment, they have held that judges have authority based on the catch-all provision in Application Note 1(D) which implicitly recognizes that other "compelling reasons" could exist aside from what is listed. *See United States v. Urkevich*, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (noting that §1B1.13 never "suggests that [its] list [of criteria] is exclusive"); *United States v. Beck*, ----F.Supp . 3d----, 2019 WL 2716505, at *8 (M.D.N.C. June 28, 2019) ("Read as a whole, the application notes suggest a flexible approach...[and] recognize that the examples listed in the application note do not capture all extraordinary and compelling circumstances.").

Consequently, the phrase "as determined by the Director of the Bureau of Prisons" has no effect on the court's discretion when determining what constitutes "extraordinary and compelling" circumstances. . *United States v. Redd*, 2020 WL 1248493, at *7 (E.D. Va. March 16, 2020) (citing cases). *See also United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended §3582(c) and §994(t) is that the district court assumes the same discretion as the BOP

United States v. Davis 4:21-cr-40164-04

director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)); *United States v. Maumau*, 2020 WL 806121, at \*3 (D. Utah Feb. 18, 2020).

To the extent that Section 1B1.13 has any application, the Court should view itself as standing in the position of the Bureau of Prisons. And now that the Court stands in the shoes of the Bureau of Prisons, it is up to the Court to decide what circumstances qualify. *See Brown*, 411 F. Supp. 3d at 449. The Government has conceded this point in other cases.[4]

Here, this Court has discretion to assess whether Mr. Davis presents "extraordinary and compelling reasons" for his release, regardless whether they fall within or outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement.

### 2. A reduction in sentence that does not fit squarely into the enumerated reasons is consistent with the BOP program criteria.

At least one court has found that the existing BOP program statement does in fact permit a reduction in sentence for the reasons other than the specific example identified in U.S.S.G. §1B1.13(1)(A)-(C). In a 80-page opinion, Judge Kearney in the Eastern District of Pennsylvania found that an inmate who did not otherwise satisfy the specific the specific compassionate release criteria described under subsection (A)-(C) was entitled to compassionate release under the catchall category, and *that doing so was entirely consistent with the existing Bureau of Prisons'' compassionate release criteria*, Program Statement 5050.50. *United States v. Adeyemi*, Case No. 06-124, Doc. 198 (E.D. Penn. July 6, 2020). The BOP factors include the nature of the defendant's offense, the defendant's personal and criminal history, a whether[5] r release would minimize the severity of the offense.

---

[4] In *United States v. Young*, the Government conceded that although the policy statement provided "useful guidance," the statement was not binding on the court. 2020 WL 1047815, at \*2 (M.D. Tenn. Mar. 4, 2020). The court went on to hold that federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons.

[5] U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 5050.50.

United States v. Davis 4:21-cr-40164-04

Mr. Adeyemi was sentenced to serve a long sentence which consisted of multiple "stacked" mandatory minimum sentences for violations of 18 U.S.C. §924(c) predicated on armed robbery offenses. Mr. Adeyemi, who suffered from asthma, was also at greater risk for complications if he were infected with COVID-19. Judge Kearney found that, although neither circumstance fit squarely within the specific examples under U.S.S.G. §1B1.13, cmt. N.1(A)-(C), compassionate release was consistent with Application Note 1(D). Mr. Adeyemi's circumstances, including the concerns raised by his health condition amidst a COVID-19 outbreak in his prison and his lengthy sentence, fulfilled the factors outlined under the Director's Program Statement 5050.50 for "other" extraordinary and compelling reasons. *Adeyemi*, at 44-50.

3.  **Mr. Davis can establish "extraordinary and compelling" reasons based on his current medical issues, pursuant to U.S.S.G. §1B1.13, cmt. N.1(A)(ii).**

Even if this Court finds that it is constrained by the existing Guidelines policy statement, Mr. Davis qualifies as an inmate suffering from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §1B1.13cmt. n.1(A)(ii)(I).

A number of courts have concluded that releasing inmates who are especially vulnerable is consistent with Comment Note 1(A)(ii)(I).[6] For example, in *United States v. Zukerman*, the district court found that Mr. Zukerman's age, combined with his medical conditions which

---

[6] Those orders that weigh vulnerability in the compassionate-release calculus include: *Miller v. United States*, 2020 WL 1814084, at *1,4 (E.D. Mich. Apr. 9, 2020); *United States v. Colvin*, 2020 WL 1613943, at *3-4 (D. Conn. Apr. 2, 2020); *United States v. Resnick*, 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2-3 (E.D. Wash. Mar. 31, 2020); *United States v. Muniz*, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Powell*, No. 1:94-cr-316-ESH, Dkt. No. 98 (D.D.C. Mar. 28, 2020); *United States v. Campagna*, 2020 WL 1489829, at *1 2 (S.D.N.Y. Mar. 27, 2020).

United States v. Davis 4:21-cr-40164-04

included diabetes and hypertension, qualified as chronic conditions that in the context of the COVID-19 pandemic substantially diminished the defendant's ability to provide self-care in a correctional environment. *See United States v. Zuckerman*, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020).

In compassionate release proceedings across the country—including this district—the Department of Justice has taken the position that inmates suffering from medical conditions placing them at greater risk of injury or death due to COVID-19 exposure have established "extraordinary and compelling" grounds for release under 19 U.S.C. §3582(c). See *United States v. Wholecheese*, Case No. 4:16-cr-8-RRB, Doc. 61 at 6 (*Gov. Opp. Br.*) ("The government concedes that the CDC considers diabetics a high-risk group for COVID-19…and that extraordinary circumstances therefore currently exist." (citing U.S.S.G. §1B1.12.1, application note (1)(A)(ii)(l).")).

In a supplemental filing made in *United States v. Wise*, the Government acknowledged that under DOJ's own guidance, the defendant's diabetes diagnosis constituted "extraordinary and compelling circumstances," during the current pandemic, which justified compassionate release. *United States v. Wise*, 1:1-cr-00072-ELH, Doc. 185 (D. Md. May 18, 2020). The Government has made similar concessions in dozens of other cases.[7]

---

[7] See, e.g., Governments' Supplemental Response, *United States v. Firebaugh*, 1:16-cr-20341-UU, ECF 43 (SD. Fl. Jun. 1, 2020) (defendant's COPD and Type II diabetes present "serious physical or medical condition(s)…that substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility and from which he…is not expected to recover.'"); Government's Response, *United States v. Feucht*, ):11-cr-60025, ECF 51 (S.D. Fla. May, 26, 2020) (conceding that if defendant presents one of the CDC risk factors as confirmed by medical records, and who is not expected to recover from that condition, presents an extraordinary and compelling reasons that would allow compassionate release even if that condition in ordinarily times would not allow compassionate release); Government's Response, *United States v. Washington*, 4:04-cr-02090-DCB-HCE, ECF 484 (D. Az. May 22, 2020) (same); Government's Response, *United States v. Hird*, 2:13-cr-0039-TJS, ECF 650 (E.D. Pa. May 19, 2020) (same).

United States v. Davis 4:21-cr-40164-04

Courts have granted compassionate release in cases where the only aliment the defendant suffers from is hypertension. *United States v. Pena*, No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension[.]"; releasing 60 year old inmate with hypertension); *United States v. Soto*, No. 1:18-CR-10086-IT, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) ("Defendant's medical records show that he suffers from hypertension. This condition increases his risk for serious complications from contracting COVID-19, including death.") *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (finding hypertension to be a comorbidity that increases the risk of death from COVID-19, and "reject[ing] the Government's contention that Mr. Scparta's general good health before the pandemic speaks to whether he should now be released.")' *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851 (E.D.N.Y., Apr. 10, 2020) (granting compassionate release to a defendant convicted of possession of child pornography who suffers from hypertension).

Based on Mr. Davis's untreated congestive heart failure, cerebrovascular disease, hypertension, diabetes, coagulation defects, severe cognitive issues, and others—easily satisfies the U.S.S.G. policy statement found at U.S.S.G. §1B1.13, cmt. 1(A)(ii)(l).

**4.  Mr. Davis is eligible even though he has not served 80% of his sentence.**

Many courts have granted compassionate release motions even where defendants have only served 20% to 30% of their sentence. In *United States v. Robinson*, 2020 WL 5200929, at*1 (W.D. Mo., July 22, 2020), the court granted the defendant's motion for compassionate release and sentenced him to home confinement for the remainder of his sentence. He had served 28

United States v. Davis 4:21-cr-40164-04

months of a 132-month sentence, or 21%. He suffered from obesity, hypertension, heart disease, and diabetes.

*United States v. Reed*, No. 3:19-CR-74 (D. Conn. June 30, 2020), the court granted compassionate release for a defendant that had only served six months of her 97-month sentence, or 6%. She had hypertension and obesity, and was also the sole caretaker of her daughter.

In *United States v, Hood*, No. 18-cr-30016 (C.D. Ill. October 23, 2020), the court granted compassionate release when the defendant had served 32 months of 120-month sentence, or 27%. The defendant had obesity, hypertension and chronic kidney disease.

Here, Mr. Davis has served more than 25% of his sentence under extreme and inhumane conditions. Mr. Davis had 2 major cardiac events while in custody. Mr. Davis has also been incarcerated without visitation from his family, making a bad situation even worse. In fact, the Sentencing Commission's latest amendments support his release. These conditions make the time that Mr. Davis has served far more severe that the court contemplated at the time of sentencing.

Notably, the Department of Justice found that "[d]efendants released through the compassionate release program are less than a tenth as likely to recidivate as the average federal prisoner." *United States v. Osonto*, 2020 WL 2323038, at *5 (N.D. Cal. May 11, 2020) (*citing* Dept. of Justice, Office of the Inspector General, The Federal Bureau of Prisons'' Compassionate Release Program 49-50 (2013) ("Inspector General")). It has estimated that "broader use of compassionate release could save taxpayers millions of dollars and free desperately needed space in BOP facilities." *Id.* (*citing* Inspector General Report at 45-48). *United States v. Copeland*, 2020 WL 2537250, at *4 (E.D.N.Y. May 19, 2020). The time that Mr. Davis has already served has achieved much of his original sentence's deterrent, incapacitative and rehabilitative purpose.

13

United States v. Davis 4:21-cr-40164-04

**C. Mr. Davis runs a high risk of serious illness or death if his heart disease continues to spiral out-of-control or he contracts COVID-19 again.**

Mr. Davis has a host of medical problems that are serious and well documented throughout his medical records. These all, individually, qualify as serious physical or medical conditions that, in the context of the increased risks associated with COVID-19 and coupled together, constitute "extraordinary and compelling" circumstances that warrant his release from custody.

The CDC and other medical authorities' have clarified that COVID-19 is especially dangerous for both older people and people with chronic medical conditions.[8] Those with serious health concerns—including chronic lung disease, moderate to severe asthma, compromised immune systems, obesity, diabetes, renal failure, and liver disease—are also especially vulnerable to and a t higher risk for serious complications, including death.[9]

Mr. Davis has multiple conditions that put him at increased risk. With his combination of conditions, he is among those with the highest risk of death or serious illness. Yet, as an incarcerated person, Mr. Davis cannot adequately protect himself from exposure to any highly transmittable disease—including COVID-19—where he would be unlikely to receive medical treatment if he does contract COVID-19 or another variant again.

For this reason, many district courts have found that inmates like Mr. Davis who suffer from CDC-recognized vulnerabilities are afflicted with a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §1b1.13 cmt.

---

[8] Centers for Disease Control and Prevention, Guidance, People with Certain Medical Conditions (available here https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2fneed-extra-precautions%2Fgroups-at-higher-risk.html)

[9] Id.

United States v. Davis 4:21-cr-40164-04

N.1(A)(ii)(l). *See* e.g., *Jackson*, 2020 WL 3396901, at *5 (N.D. Ind. June 19, 2020) (defendant suffering from hyoertension and bronchitis); *United States v. Madrigal*, 2020 WL 3188268, at *2 (N.D. Cal. June 15, 2020) (defendant suffering from severe obesity and hypertension); *United States v. Purpera*, 2020 WL 3272049, at *2 (W.D. Va. June 17, 2020) (hypertension and kidney disease); *United States v. Perdigao*, 2020 WL 1672322, at *1 (E.D. La. Apr. 2, 2020) (hypertension and cardiac problems).

**D. Mr. Davis will not be a danger to the community if released, and a sentence of time served constitutes a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing.**

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in §3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. §3582(c)(1)(A)(i). Under all of the circumstances in this case, the Court should conclude that the time that Mr. Davis has already served is sufficient to satisfy the purposes of sentencing. Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under §3553(a).

Here, the main factors under §3553(a) that were not present at the time of sentencing are Mr. Davis's increasing cardiovascular disease, pulmonary problems, COVID-19, and the documented inability of the BOP to provide medical care to seriously ill inmates. The sentencing purpose of just punishment does not warrant a sentence that includes a failure to treat serious illness, and the medical neglect that landed Mr. Davis in the hospital multiple times.

In fact, the Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. *Helling v. McKinney*, 509 U.S. 25, 28 (1993); see also *Wallis v. Baldwin*, 70. F.3d 1074, 1076 (9th Cir. 1995) (applying *Helling* to

United States v. Davis 4:21-cr-40164-04

exposure to asbestos); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying *Helling* to contagious diseases caused by overcrowding conditions).

The §3553(a) factors can be met in this case by an order of home confinement as a condition of supervised release.

Additionally, Mr. Davis's conduct while incarcerated, establishes that the purposes of punishment have been met. Under *Pepper*, the Court must also consider "the most up-to-date picture" of the defendant's history and characteristics, which "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." 562 U.S. at 492. Mr. Davis has availed himself of what little programming has been available to him. He has been employed while incarcerated and conducted himself in a manner conducive with someone that is ready to reenter the community. Mr. Davis's conduct coupled with his debilitating illness shows that he no longer threatens public safety, and that granting him compassionate release would not endanger the community.

The totality of the circumstances demonstrates that reducing Mr. Davis's sentence to time served is "sufficient, but not greater than necessary," to serve the purposes of sentencing under §3553(a).

## V.    CONCLUSION

Mr. Davis has a release plan to ensure his safe transition to the community. Mr. Davis will stay with his son in his home in South Dakota where he can receive the medical treatment he cannot get in the BOP.

Mr. Davis begs for an order granting a reduction in sentence to time served and an extended period of home confinement and supervised release.

United States v. Davis 4:21-cr-40164-04

Respectfully submitted this 24th day of April, 2024.

X  *Charles Vernon Davis*
Charles Vernon Davis
Fed. Reg. No. 78181-509
FMC Lexington
PO Box 14500
Lexington, Kentucky 40512

United States v. Davis 4:21-cr-40164-04